UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASHLEY REDMON,

            Plaintiff,         Civil Action No. 12-15462
v.                                     Honorable Bernard A. Friedman
                                            Magistrate Judge David R. Grand

SINAI-GRACE HOSPITAL,

            Defendant.
_____/

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [14]**

Before the Court is the Motion for Summary Judgment filed by Defendant VHS Sinai-Grace Hospital, Inc. ("Sinai-Grace") on June 12, 1013. (Doc. #14). *Pro se* plaintiff Ashley Redmon ("Redmon") filed a response to this motion on July 8, 2013 (Doc. #20), and Sinai-Grace filed a reply brief on July 24, 2013 (Doc. #21).[1] An Order of Reference was entered on December 17, 2012, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #4).

Pursuant to E.D. Mich. L.R. 7.1(f)(2), the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

**I.    RECOMMENDATION**

The instant motion presents a close call: Sinai-Grace is attempting to enforce a release agreement which, at best, inartfully spells out the obligations it was to undertake in exchange for Redmon's release, and at worst, fails to impose on Sinai-Grace any obligation it did not already

---

[1] Sinai-Grace also filed a supplemental brief in support of its motion on June 14, 2013. (Doc. #17).

have (which would make the agreement fail for lack of consideration). For the reasons set forth below, the Court finds that, at least at this early stage of the proceedings, the latter interpretation must prevail. **IT IS THEREFORE RECOMMENDED** that Sinai-Grace's Motion for Summary Judgment (Doc. #14) be **DENIED**.

## II. REPORT

### A. Background[2]

Redmon, an African-American female, began a radiology student program at the Sinai-Grace Hospital School of Radiologic Technology on June 28, 2010. (Doc. #1 at 3). Shortly thereafter, on August 9, 2010, Redmon got into an argument with a Caucasian student. (*Id.*). After an investigation, Sinai-Grace expelled both Redmon and the other student from the program. Following an appeal, however, both students were conditionally reinstated. (*Id.*). On May 22, 2011, Redmon began employment at Sinai-Grace as a Radiology Assistant. (*Id.*).

On May 24, 2012, Redmon applied for a Radiologic Technologist position at Sinai-Grace. (*Id.*). Redmon asserts that, on June 14, 2012, she was told that she would not be hired for the position because Sinai-Grace was "allegedly trying to change their culture." (*Id.*). Sinai-Grace, on the other hand, claims that Redmon was not offered the position because she did not meet its minimum requirements, as she was not considered "registry eligible" by the American Registry of Radiologic Technologists in Radiography.[3] (Doc. #14 at 7).

---

[2] For purposes of Sinai-Grace's motion for summary judgment, the Court takes as true all well-pleaded factual allegations in the complaint and construes all reasonable inferences from those allegations in Redmon's favor. *See Smith v. Wyeth, Inc.*, 657 F.3d 420, 423 (6th Cir. 2011). Complaints of *pro se* litigants are construed more liberally than those drafted by attorneys. *See West v. Adecco Empl. Agency*, 124 F. App'x 991, 992 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Thus, the following facts are taken generally from Redmon's complaint and its attachments, unless otherwise noted.

[3] Redmon concedes that, as of June 14, 2012, she was not "registry eligible." (Doc. #20 at 5). However, she asserts that this is not the reason she was given for being denied employment as a

On July 11, 2012, Redmon filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Michigan Department of Civil Rights ("MDCR"), claiming that she was not hired as a Radiologic Technologist because of her race in violation of Title VII.[4] (Doc. #1 at 3). It appears that, just a few days later, on July 17, 2012, Redmon filed a second Charge of Discrimination with the EEOC and MDCR, re-alleging that Sinai-Grace discriminated against her on the basis of race when it failed to hire her as a Radiologic Technologist on June 14, 2012, and adding an allegation that she was "discharged without reason" on July 1, 2012.[5] (Doc. #17 at Ex. 2).

On October 3, 2012, after conducting an investigation, the EEOC issued a "Dismissal and Notice of Rights" as to Redmon's first charge of discrimination, indicating that it was "unable to conclude that the information obtained establishes violations of the statutes." (Doc. #14 at Ex. 4). On December 6, 2012, the MDCR issued a Notice of Disposition and Order of Dismissal, wherein it "accepted the finding of the EEOC" and dismissed Redmon's first charge of discrimination. (*Id.* at Ex. 5).

On December 13, 2012 – while the second charge of discrimination was still pending before the EEOC and MDCR – Redmon filed the instant Title VII action, alleging that Sinai-Grace failed to hire her for the Radiologic Technologist position. (Doc. #1). Shortly thereafter, on January 17, 2013, Redmon, Sinai-Grace, and the MDCR entered into a Settlement Agreement (the "Agreement"), which disposed of the second charge of discrimination [6] (Doc. #14 at Ex. 6). It is this Agreement that forms the basis of Sinai-Grace's instant motion for summary judgment.

---

Radiologic Technologist. (*Id.*). Although Redmon devotes a significant portion of her response brief to a discussion of this disputed fact, this issue is not presently before the Court.

[4] EEOC No. 471-2012-02583 and MDCR No. 436849.

[5] EEOC No. 23A-2012-01089 and MDCR No. 436271.

[6] The Agreement made no mention of the instant lawsuit.

3

The Agreement provides that it was "entered into voluntarily." (*Id.*, ¶1.A). It further provides: "The claimant considers this agreement to be an acceptable resolution of this matter. The claimant also agrees not to sue the respondent with respect to any matters pertaining to the above numbered complaint." (*Id.*, ¶1.D). Additionally, the Agreement contains the following "SPECIFIC PROVISIONS":

> 1) Respondent agrees Claimant will be provided equal opportunity for employment. Claimant agrees to contact Marcia Griffin, EEO Planning Specialist Human Resources upon application processing in her efforts to apply for job positions at the DMC for which she meets minimum qualifications.
>
> 2) Respondent agrees Claimant will be provided equal employment opportunity relevant to the provisions in the Employee Movement policy #1 HR 104 and its' [sic] new hire procedure.
>
> 3) Respondent agrees to reaffirm its' [sic] prohibition of retaliation and equal opportunity for employment policies.

(*Id.* at Ex. 6, ¶II). On June 12, 2013, Sinai-Grace filed the instant motion for summary judgment, arguing that Redmon's Title VII race discrimination claim is barred by the Agreement. (Doc. #14).

### B. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo*

4

*v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

    **C.**    **Analysis**

        *1.*    *General Legal Principles*

The Sixth Circuit has recognized that employers and employees may negotiate valid releases of Title VII claims. *See Runyan v. National Cash Register Corp.*, 787 F.2d 1039 (6th Cir. 1986). Indeed, knowing and voluntary agreements to settle such cases are favored by courts and, once executed, should not be subject to easy invalidation. *See Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981) ("[i]n enacting Title VII, Congress expressed a strong preference for encouraging voluntary settlement of employment discrimination claims"). In other words, "A valid settlement agreement reached in the course of EEOC administrative proceedings concludes the issues addressed and forecloses a subsequent lawsuit on the same issues." *Mulbah v. Ypsilanti Bd. of Educ.*, 2006 WL 3240681, at *7 (E.D. Mich. Nov. 7, 2006);

*see also Dalessandro v. Monk*, 864 F.2d 6, 8 (2d Cir. 1988) ("Once a plaintiff settles a claim and withdraws it from the EEOC, he may not then sue on the same claim in federal court.").

In determining whether a claimant has waived her right to continue with a discrimination claim, courts apply ordinary contract principles, the first step of which is determining whether a valid contract exists. *See Mulbah*, 2006 WL 3240681, at *7 (citing *Adams v. Phillip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995)). Under Michigan law, the essential elements of a valid contract are "(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Thomas v. Leja*, 187 Mich. App. 418, 422 (1991). Legal consideration exists when something of value – such as an act, a forbearance, or a return promise – is received by a promisor for a promise. *See Mendoza v. Gorno Ford ELC, L.L.C.*, 2013 WL 2096633, at *1 (Mich. App., May 14, 2013) (quoting Black's Law Dictionary (7th ed.) p. 300)). "A court is bound to give the language used in a release its plain, ordinary meaning." *Mulbah*, 2006 WL 3240681, at *7. When the parties have negotiated a settlement agreement, and both parties agreed to the language contained therein, the court will assume the parties were fully aware of the agreement's terms and scope. *Id.*

In this case, Redmon does not dispute that she knowingly and voluntarily signed the Agreement. Nor does she assert fraud, ambiguity, or duress. The Agreement was negotiated after the EEOC stated – with respect to Redmon's first (nearly identical) charge of discrimination – that it was "unable to conclude" that Sinai-Grace's actions violated Title VII. (Doc. #14 at Ex. 4). Thus, Redmon certainly had an incentive to settle her second charge of discrimination. The terms of the Agreement were approved by the MDCR, as evidenced by the signature of its representative on the document. (*Id.* at Ex. 6). On its face, then, it appears that Redmon agreed to the "resolution of this matter" and "not to sue [Sinai-Grace] with respect to any matters

6

pertaining to [her civil rights claim].[7]

In her response to Sinai-Grace's motion for summary judgment, however, Redmon asserts that the Agreement is void for lack of consideration because Sinai-Grace merely agreed to do what it was already legally obligated to do. (Doc. #20 at 5). Specifically, Redmon asserts that, in exchange for her release of claims, Sinai-Grace merely agreed "that [it] would follow [its] policies" and reaffirm its prohibition on retaliation and commitment to equal employment opportunity. (*Id.* at 8). According to Redmon, these promises do not constitute valid consideration because Sinai-Grace had a preexisting duty to take these actions.

Courts have recognized that, "It is beyond cavil that '[a] release is not effective unless the party giving the release receives something of value to which the party was not otherwise entitled.'"[8] *Davis v. Eastman Kodak Co.*, 2007 WL 952042, at *10 (W.D.N.Y. Mar. 29, 2007) (quoting *Chaput v. Unisys Corp.*, 964 F.2d 1299, 1301 (2d Cir. 1992)). *See also, Hogue v. Nat'l. Automotive Parts Ass'n.*, 87 F. Supp. 816, 821 (D.C. Mich. 1950) (a "release is not supported by sufficient 'consideration' unless something of value is received to which the [releasing party] had no previous right."). "If a release is not supported by adequate consideration, it is void because there is no contract." *Davis*, 2007 WL 952042, at *10. Thus, the questions this Court must resolve are: (1) what promises did Sinai-Grace make to Redmon in exchange for her release of claims, and (2) did Sinai-Grace have a preexisting duty to take the promised actions, regardless of the terms of the Agreement?

---

[7] Redmon has not argued that the scope of the Agreement does not encompass the substance of her lawsuit.

[8] In its reply brief, Sinai-Grace quotes a portion of the decision in *Runyan v. NCR Corp.*, 573 F. Supp. 1454, 1460 (S.D. Ohio. 1983), for essentially the same proposition, asserting, "The question of the adequacy of consideration turns not on whether the plaintiff received as much as she would have if she had litigated and won, but rather on **whether she received something to which she was not already unquestionably entitled**." (Doc. #24 at 7) (emphasis in brief).

### 2.     *The Promises Contained in the Agreement*

As set forth above, Redmon argues that, in exchange for her release of claims, Sinai-Grace merely agreed "that [it] would follow [its] policies" and reaffirm its prohibition on retaliation and commitment to equal employment opportunity.  (Doc. #20 at 8).  Sinai-Grace argues that this mischaracterizes the terms of the Agreement, asserting that "specific remedies were tailored for Plaintiff's benefit."  (Doc. #21 at 8).  According to Sinai-Grace:

> Sinai-Grace contractually agreed to accept Plaintiff's future employment applications for positions where minimum qualifications were satisfied, and to involve an EEO Planning Specialist to oversee her applications during the hiring process.
>
> \*     \*     \*
>
> Here, Plaintiff does not have an "absolute right" to be considered for employment by Sinai-Grace.  Nor does Plaintiff have an "absolute right" to the allocation of resources by Sinai-Grace to oversee her consideration.

(*Id.*).  Sinai-Grace also repeatedly asserts in its reply brief that it "agreed to assign a specific EEOC specialist to oversee the contemplated applications from Plaintiff."  (*Id.* at 9-10).

The Court disagrees that such obligations of Sinai-Grace can be found in the Agreement's plain language.  In fact, the only affirmative actions Sinai-Grace promised to undertake were: (1) "not to retaliate against a person who opposed an unlawfully discriminatory practice"; (2) to "reaffirm its' [sic] prohibition of retaliation and equal opportunity for employment policies"; and (3) to provide Redmon with "equal opportunity for employment" and "equal employment opportunity."  (Doc. #14 at Ex. 6, ¶¶I.C, II.1-3).  These promises do not constitute legal "consideration."

### 3.     *Sinai-Grace's Promises Do Not Constitute Valid Legal Consideration*

In general, a party's promises to provide a workplace free of unlawful discrimination or to provide equal employment opportunity – both of which an employer is already legally

8

obligated to do – do not constitute valid consideration. *See, e.g., Cataldo v. Moses*, 2005 WL 705359, at *9 (D.N.J. Mar. 29, 2005) (promise not to engage in illegal discrimination and to protect those who complain of discrimination against retaliation is not valid consideration); *Malladi v. Brown*, 987 F. Supp. 893, 907 (M.D. Ala. 1997) (employer's promise to provide a non-discriminatory work environment is not valid consideration supporting release because holding otherwise would allow "the party under the legal obligation [to] take unfair advantage of the other party by getting additional benefit for doing something it is already obliged to do by law"); *Start v. Apple Computer, Inc.*, 1996 WL 161603, at *3 (N.D. Cal. Mar. 29, 1996) ("Apple's promise not to discriminate is a preexisting legal obligation. Apple is already legally obligated to fulfill a duty not to discriminate under federal and state law …. Further, Apple suffers no additional detriment in performing its legal obligation. Accordingly, Apple's promise to perform its preexisting duty is not legal consideration ….") (internal citations omitted). Thus, Sinai-Grace's promises to provide "equal employment opportunity" and not to unlawfully retaliate are not themselves valid consideration given in exchange for Redmon's release.

Sinai-Grace argues that the consideration it provided was sufficient, asserting that Redmon "does not have an 'absolute right' ***to be considered*** for employment." (Doc. #21 at 8) (emphasis added). In support of this argument, Sinai-Grace cites several cases from different jurisdictions, claiming that "[n]umerous federal courts have enforced settlements of Title VII claims under similar, or less compelling, facts." (Doc. #21 at 8). Those cases are distinguishable, however, both because Sinai-Grace did not actually promise to consider Redmon for employment, and because the consideration provided in those cases exceeds that provided by Sinai-Grace in the instant case.

For example, in *Ginwright v. Dayton Bd. of Educ.*, 2010 WL 1741331 (S.D. Ohio. Apr.

9

29, 2010), the plaintiff filed a disability discrimination charge with the Ohio Civil Rights Commission, which eventually resulted in the parties executing a conciliation agreement. The "major operative terms" of that agreement were the plaintiff's promise to release her claims against the school district in exchange for a promise that "she would be considered for reappointment as a teacher for the 2007-2008 school year." *Id.* at *3. Indeed, in the agreement, the school district expressly promised to "consider [plaintiff] for a full-time teaching position for the 2007–2008 school year upon receipt of [plaintiff's] application…" *Id.* (quoting agreement). The court found that these mutual promises were adequate consideration to support the formation of a contract. *Id.* at *6 fn. 5. The instant case is different. Unlike the school board's specific promise in *Ginwright* to "consider" the plaintiff for employment upon receipt of her application (which is not something it was legally obligated to do prior to the plaintiff's execution of the conciliation agreement), in this case, there is no indication in the Agreement that Sinai-Grace promised to actually consider Redmon for future openings. Rather, it merely promised to provide Redmon with "equal opportunity for employment," which is something that it was otherwise legally obligated to do (for all applicants for employment, including Redmon).

Likewise, in *Williams v. Univ. of Miss. Medical Center*, 2011 U.S. Dist. LEXIS 78656 (S.D. Miss. July 19, 2011), the parties signed a settlement agreement by which the plaintiff agreed to release his claims against the defendant in exchange for the defendant's promise to "consider [the plaintiff], along with all other qualified applicants, for future promotional opportunities for which he applies and is qualified to fill." *Id.* at *12. The plaintiff argued that this was not adequate consideration, as the defendant was merely agreeing to "do those things that federal law already require[d] it to do." *Id.* The court disagreed, finding that the defendant's promise to consider the plaintiff for all future positions for which he was qualified and applied

10

constituted a benefit to which the plaintiff would not otherwise be legally entitled, particularly where the plaintiff had previously been reprimanded for poor work performance. *Id.* at *12-13. Thus, like *Ginwright*, *Williams* is distinguishable from the instant case, where Sinai-Grace did not promise to consider Redmon for employment but merely indicated that she (along with all other applicants) would be provided "equal opportunity for employment."

Sinai-Grace also relies on *DiMartino v. City of Hartford*, 636 F. Supp. 1241 (D. Conn. 1986). In that case, the parties entered into a settlement agreement whereby the plaintiff agreed to release his claims against the city in exchange for the city's promises (1) to allow him to submit to the testing process for the position of probationary police officer, and (2) to exempt him from taking the normally-required written test. *Id.* at 1249. The plaintiff subsequently argued that the settlement agreement failed for lack of consideration because he had a "preexisting right" to take the test at issue in that the city "would have permitted any similarly qualified but inexperienced applicant to take the examinations necessary to become a probationary police officer." *Id.* at 1250. The court disagreed, finding that the issue of whether the plaintiff had any right at all to even apply for a probationary police officer position was a "matter of bona fide dispute" in the litigation; as such, by permitting the plaintiff to take the test (and otherwise compete for a position as a probationary police officer), the city was providing the plaintiff with "something of value to which he was not already unquestionably entitled." *Id.* (internal quotations omitted). In this case, however, Redmon was already "unquestionably entitled" to equal employment opportunity under both state and federal law; thus, Sinai-Grace's promise to provide her with this "benefit" in exchange for her release of claims does not constitute valid consideration.[9]

---

[9] Other cases relied upon by Sinai-Grace are similarly distinguishable. *See White v. Ameritel*

11

Many of the other cases cited by Sinai-Grace actually support Redmon's argument as well. For example, Sinai-Grace cites *Johnson v. Seacor Marine Corp.*, 404 F.3d 871, 877 (5th Cir. 2005), for the (bolded, italicized) proposition that "***even if a contract does not require any performance that would not have been done in the absence of the contract, as long as the contracting parties gain some legally enforceable right as a result of the contract which they previously did not have, consideration is present***." (Doc. #21 at 7). In this case, however, that is exactly the issue: the promises Sinai-Grace made did not actually convey to Redmon any legally enforceable right by virtue of her signing the Agreement. Even if she had not executed the Agreement, she was entitled to "be provided equal opportunity for employment" and to be free from unlawful retaliation.[10]

> 4.  *The Agreement's Requirement that Redmon Contact a Particular Sinai-Grace Employee Is Not Necessarily Consideration Given by Sinai-Grace*

Sinai-Grace tries to buttress its promise to provide Redmon with "equal opportunity for employment" by asking the Court to read it in conjunction with *Redmon's* promise "to contact Marcia Griffin, [Sinai-Grace's] EEO Planning Specialist Human Resources upon application processing in her efforts to apply for job positions at the DMC for which she meets minimum

---

*Corp.*, 2011 U.S. Dist. LEXIS 148709 (D. Md. Dec. 28, 2011) (Ameritel's agreement "not to discriminate or retaliate against [p]laintiff" "gave rise to a contract obligation between the parties"; however, the court did not address the issue of consideration, and it specifically noted that Ameritel's promise not to discriminate or retaliate was provided "[a]mong other things"); *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307 (7th Cir. 1996) (finding that consideration for Title VII settlement was valid where employer "took a number of steps" to modify its promotion procedure and agreed to promote certain candidates); *Daigle v. West*, 225 F. Supp. 2d 236, 247 (N.D.N.Y. 2002) ("assurances of Plaintiff's right to work in an environment free from sexual harassment and to not subject him to reprisal for his use of the discrimination process may be viewed as Defendant's pre-existing duties and therefore not valid consideration").

[10] Sinai-Grace's promise to "reaffirm its' [sic] prohibition of retaliation and equal opportunity for employment policies" is of no consequence because Sinai-Grace, by maintaining these policies in the first place, was already constantly "reaffirming" it. Sinai-Grace gave no indication that it actually agreed to take any new action as a result of this promise in the Agreement.

12

qualifications." (Doc. #14 at Ex. 6, ¶II.1). While it is a close call, on the limited record presented, the Court cannot say that those provisions collectively amount to legal consideration given by Sinai-Grace.

Read literally, that provision imposes an obligation only on *Redmon*, not on Sinai-Grace.[11] Thus, the Court cannot say that by virtue of this provision, Sinai-Grace promised to provide Redmon with a benefit to which she was not otherwise entitled. To find otherwise, one would need to infer from the verbiage that Sinai-Grace was, at a minimum, agreeing to "process" any applications submitted by Redmon for positions for which she was qualified; such a promise may or may not be enough to constitute valid consideration. However, the above case law suggests that to fully cross into "valid consideration" territory, one would need to also infer that Sinai-Grace was agreeing to actually *consider* Redmon's qualified applications and/or that Griffin would actively work with Redmon to walk her through that consideration process. While the Court is loath to not enforce a release agreement in which an individual has clearly given up her right to pursue a claim, this is at least one too many inferences to merit granting summary judgment.[12]

---

[11] It is true that Redmon does not have "an 'absolute right' to the allocation of resources by Sinai-Grace to oversee her consideration," as Sinai-Grace asserts. (Doc. #21 at 8). The Court could certainly envision a situation in which a respondent provides sufficient consideration for a claimant's agreement to the terms of a release by designating one individual to receive and properly process her future employment application materials. In that case, depending on how the provision was drafted, the claimant arguably is provided a benefit to which she is not otherwise entitled. In this case, however, the Court cannot say that Sinai-Grace promised to undertake such an obligation.

[12] The Court notes that hypothetically reversing the parties' positions further supports its conclusion. For instance, assume Redmon had applied for a position, was not actively considered by Sinai-Grace, and then filed suit. Might Sinai-Grace not attempt to argue that, unlike the agreements in *Ginwright* and *Williams*, it had not specifically agreed to "consider" Redmon's applications?

> 5. *Sinai-Grace's Public Policy Argument*
> *Does Not Entitle it to Summary Judgment*

Sinai-Grace also argues that the Agreement should be deemed enforceable because public policy favors voluntary settlement of claims and enforcement of releases. (Doc. #21 at 5-6). According to Sinai-Grace, "'Allowing one party to renounce an agreement and sue for additional relief would undermine our longstanding policy of encouraging settlement, thereby creating a disincentive to the amicable resolution of legal disputes and defeating the purposes of title VII.'" (*Id.* (quoting *Jackson v. Widnall*, 99 F.3d 710 (5th Cir. 1996)). While this proposition might be true in the abstract, the fact remains that a release must be *valid* in order for it to be enforceable. Here, where the Agreement fails for lack of consideration for all of the reasons set forth above, the Court simply cannot enforce its terms. Moreover, public policy favors enforcement of valid settlement agreements in order to prevent one party from reaping the benefits of such an agreement, while retaining the right to later bring suit if she determines that she should have received different or additional consideration. *See, e.g., Williams v. Univ. of Miss. Med. Center*, 2011 U.S. Dist. LEXIS 75654, at *10 (S.D. Miss. July 19, 2011) (plaintiff would not be permitted to retain the benefit of her settlement bargain – there, a good reference and an agreement not to disclose her termination – and press on in a subsequent lawsuit). Here, however, Redmon received no real benefit in exchange for her release of claims; thus, the public policy reasons favoring enforcement of settlement agreements are inapplicable on the facts of this case.[13]

---

[13] Sinai-Grace also argues that the Agreement is presumptively valid, citing *Gooden v. Illinois Cent. Gulf. R.R.*, 774 F.2d 1162 (6th Cir. 1985), and *Kelley v. Thomas Solvent Co.*, 790 F. Supp. 731 (W.D. Mich. 1991), for the proposition that "[i]n title VII litigation, negotiated consent agreements enjoy a ***presumption of validity***." (Doc. #21 at 6) (emphasis added by Sinai-Grace). A review of these cases, however, makes clear that they are not on point. In both *Gooden* and *Kelley*, at issue were consent decrees entered by the Court, not private settlement agreements between the parties.

14

## III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Sinai-Grace's Motion for Summary Judgment (Doc. #14) be **DENIED**.

Dated: October 17, 2013                s/ David R. Grand
                                       DAVID R. GRAND
                                       UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

15

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 17, 2013.

                                              s/Felicia M. Moses
                                              FELICIA M. MOSES
                                              Case Manager