UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASHLEY REDMON,

                Plaintiff,         Civil Action No. 12-15462

v.                                     Honorable Bernard A. Friedman
                                        Magistrate Judge David R. Grand

SINAI-GRACE HOSPITAL,

                Defendant.
_____/

## REPORT AND RECOMMENDATION ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT [28, 32]

Before the Court are Defendant VHS Sinai-Grace Hospital's ("Sinai-Grace") second Motion for Summary Judgment [32], and plaintiff Ashley Redmon's ("Redmon") motion for summary judgment [28]. An Order of Reference was entered on December 17, 2012, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). [4].

The instant motions concern the enforceability of a release that Redmon signed in which she agreed not to sue her former employer, Sinai-Grace, with respect to the conduct alleged in her complaint. In lieu of filing an answer, Sinai-Grace moved for summary judgment, arguing that Redmon waived her claims pursuant to the release. [14]. On October 17, 2013, this Court issued a Report and Recommendation to deny Sinai-Grace's motion, finding that, on the limited record before it, it could not conclusively determine whether Redmon's release of her claims was supported by valid consideration, and therefore enforceable:

> [Sinai-Grace's summary judgment] motion presents a close call: Sinai-Grace is attempting to enforce a release agreement which, at best, inartfully spells out the obligations it was to undertake in exchange for Redmon's release, and at worst, fails to impose on Sinai-Grace any obligation it did not already have (which would make the agreement fail for lack of consideration).... ***at least at this early stage of the proceedings***, the latter interpretation must prevail...

> \* \* \*
>
> …***on the limited record presented***, the Court cannot say that [the clauses in question] collectively amount to legal consideration given by Sinai-Grace.

[22 at 1-2, 13 (emphasis added)].

That Report and Recommendation was adopted by the District Court, without objection, on November 4, 2013. [24].[1] The instant motions are presented on a more-extended factual record, and at a hearing held on March 19, 2014, both parties presented argument. The Court held the matter in abeyance for a week to allow the parties to engage in settlement discussions. As neither party has informed the Court of any resolution, the matter is now ripe for disposition.[2]

## I. RECOMMENDATION

While Sinai-Grace's first motion for summary judgment was denied based on the limited record presented, the more extended factual record now before the Court shows that Sinai-Grace did, in fact, provide consideration to Redmon in exchange for her release of the claims asserted in this action. Therefore, for the reasons set forth below, the Court **RECOMMENDS** that Sinai-Grace's Motion for Summary Judgment **[32]** be **GRANTED** and Redmon's Motion for Summary Judgment **[28]** be **DENIED**.

---

[1] Because this Court's Report and Recommendation was adopted by the District Court, the opinions cited therein became the ruling of the District Court. Therefore, for ease of reference, the Court will refer to the October 17, 2013 Report and Recommendation as "the Order."

[2] The Court notes that on February 28, 2014, Redmon attempted to unilaterally amend her complaint, without seeking concurrence of Sinai-Grace, or leave of the Court, as required by Fed. R. Civ. P. 15(a)(2). [34]. On March 3, 2014, the Court struck the amended complaint for failing to comply with this rule. In Redmon's response to Sinai-Grace's motion for summary judgment, she asserts that she is going to move for leave to file an amended complaint to add new claims, but to date has not done so. (Plf. Mot. at 2 n.1).

## II.   REPORT

### A.   Background

The following facts are reprinted from the Court's prior Order and are not in dispute. Redmon, an African-American female, began a radiology student program at the Sinai-Grace Hospital School of Radiologic Technology on June 28, 2010. Shortly thereafter, on August 9, 2010, Redmon got into an argument with a Caucasian student. After an investigation, Sinai-Grace expelled both Redmon and the other student from the program. Following an appeal, however, both students were conditionally reinstated. On May 22, 2011, Redmon began employment at Sinai-Grace as a Radiology Assistant.

On May 24, 2012, Redmon applied for a Radiologic Technologist position at Sinai-Grace. Redmon asserts that, on June 14, 2012, she was told that she would not be hired for the position because Sinai-Grace was "allegedly trying to change their culture." Sinai-Grace, on the other hand, claims that Redmon was not offered the position because she did not meet its minimum requirements, as she was not considered "registry eligible" by the American Registry of Radiologic Technologists in Radiography.[3] [

On July 11, 2012, Redmon filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Michigan Department of Civil Rights ("MDCR"), claiming that she was not hired as a Radiologic Technologist because of her race in violation of Title VII.[4] It appears that, just a few days later, on July 17, 2012, Redmon filed a second Charge of Discrimination with the EEOC and MDCR, re-alleging that Sinai-Grace discriminated against

---

[3] Redmon concedes that, as of June 14, 2012, she was not "registry eligible." However, she asserts that this is not the reason she was given for being denied employment as a Radiologic Technologist. Although Redmon devotes a significant portion of her response brief to a discussion of this disputed fact, this issue is not presently before the Court.

[4] EEOC No. 471-2012-02583 and MDCR No. 436849.

3

her on the basis of race when it failed to hire her as a Radiologic Technologist on June 14, 2012, and adding an allegation that she was "discharged without reason" on July 1, 2012.[5]

On October 3, 2012, after conducting an investigation, the EEOC issued a "Dismissal and Notice of Rights" as to Redmon's first charge of discrimination, indicating that it was "unable to conclude that the information obtained establishes violations of the statutes." On December 6, 2012, the MDCR issued a Notice of Disposition and Order of Dismissal, wherein it "accepted the finding of the EEOC" and dismissed Redmon's first charge of discrimination.

On December 13, 2012 – while the second charge of discrimination was still pending before the EEOC and MDCR – Redmon filed the instant Title VII action, alleging that Sinai-Grace failed to hire her for the Radiologic Technologist position. Shortly thereafter, on January 17, 2013, Redmon, Sinai-Grace, and the MDCR entered into a Settlement Agreement (the "Agreement"), which disposed of the second charge of discrimination.[6] It is this Agreement, and the conduct engaged in subsequent to it, that has formed the basis of the parties' prior and instant motions for summary judgment.

The Agreement provides that it was "entered into voluntarily." It further provides: "The claimant considers this agreement to be an acceptable resolution of this matter. The claimant also agrees not to sue the respondent with respect to any matters pertaining to the above numbered complaint." Additionally, the Agreement contains the following "SPECIFIC PROVISIONS":

> 1) Respondent agrees Claimant will be provided equal opportunity for employment. Claimant agrees to contact Marcia Griffin, EEO Planning Specialist Human Resources upon application processing in her efforts to apply for job positions at the DMC for which she meets minimum qualifications.

---

[5] EEOC No. 23A-2012-01089 and MDCR No. 436271.

[6] The Agreement made no mention of the instant lawsuit.

> 2) Respondent agrees Claimant will be provided equal employment opportunity relevant to the provisions in the Employee Movement policy #1 HR 104 and its' [sic] new hire procedure.
>
> 3) Respondent agrees to reaffirm its' [sic] prohibition of retaliation and equal opportunity for employment policies.

This Court previously explained that, "Sinai-Grace tries to buttress its promise to provide Redmon with 'equal opportunity for employment' by asking the Court to read it in conjunction with Redmon's promise 'to contact Marcia Griffin, [Sinai-Grace's] EEO Planning Specialist Human Resources upon application processing in her efforts to apply for job positions at the DMC for which she meets minimum qualifications.'  qualifications." (Doc. #14 at Ex. 6, ¶II.1). While it is a close call, on the limited record presented, the Court cannot say that those provisions collectively amount to legal consideration given by Sinai-Grace." [22 at 12-13].

The following newly-revealed undisputed facts show Sinai-Grace's argument is, in fact, meritorious.  At oral argument, Redmon's counsel unambiguously acknowledged that when Redmon executed the Agreement she understood that Sinai-Grace was agreeing that Marcia Griffin would shepherd Redmon through the application process.  Redmon's understanding proved to be accurate.  After executing the Agreement, Redmon contacted Ms. Griffin to discuss employment opportunities, and the two exchanged multiple communications about those jobs. (Def. Mot. Ex. 7 (Plf. Resp. to Interrogatories) ¶14; Ex. 8).  On May 15, 2013, Ms. Griffin left Redmon a voicemail message about a potential job, "asking her to contact Dianna Hatch [a Harper Hospital hiring authority] before 5 pm tomorrow or the position would be released." (Def. Mot. Ex. 9).  Redmon admits receiving Griffin's voicemail, but not until May 20, 2013, as Redmon was apparently experiencing difficulties with her voicemail or phone.  (*Id.*).  On May 20, 2013, Redmon telephoned Ms. Griffin to discuss her job applications (*id.* Ex. 7 ¶14), and also sent her the following e-mail:

> Unfortunately I was unable to receive phone calls from yourself or the individual who contacted me from Harper Hospital. However, I finally was able to retrieve voicemails and I realized that I missed an opportunity for an interview. It seems that it would have been appropriate to use an alternative method to contact me, such as my email address. Thank you for attempting to reach me.

(Def. Mot. Ex. 9).

Ms. Griffin avers that she "did not perform this function [i.e., being a designated "point person" to shepherd an applicant's job applications through the hiring process] for any other candidates competing for the same position as [Redmon]." (Def. Mot. Ex. 1 ¶4).

Both parties now move for summary judgment. Redmon argues that summary judgment in her favor is appropriate because the Court's ruling on Sinai-Grace's first motion for summary judgment foreclosed any subsequent motion, as it held that there was not adequate consideration for Redmon's agreement to waive her right to sue. Sinai-Grace disagrees, arguing that the Court's ruling expressly noted that the record before it at that time was insufficient to support a finding of valid consideration, and that summary judgment might be proper on a more full record, such as is now before the Court. Sinai-Grace itself moves for summary judgment on this very record, arguing that the Agreement's designation of Ms. Griffin as the contact person for Redmon to help aid her in the application process, which was a benefit not extended to other competing candidates, constitutes adequate consideration as a matter of law in exchange for Redmon's release, thus rendering that release enforceable.

### B. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material

if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

    **C.**    **Analysis**

        *1.*    *Redmon's Motion for Summary Judgment*

The Court first addresses Redmon's Motion for Summary Judgment, which is premised on the assertion that the Court's denial of Sinai-Grace's first motion for summary judgment precludes re-litigation of the same issue here. The Court disagrees.

In its Order, the Court held, in relevant part, that there was insufficient evidence to show, as a matter of law, that sufficient consideration was given by Sinai-Grace in exchange for

7

Redmon's waiver of her right to sue. [22 at 8-13]. Specifically, the Court found that the terms of the Agreement, including the language that Sinai-Grace promised to provide Redmon with "equal opportunity for employment" and "equal employment opportunity," were insufficient to show that Sinai-Grace was giving something of value to Redmon more than what it was already legally obligated to do. [*Id.*]. The Court further found that the language directing Redmon "to contact Marcia Griffin, [Sinai-Grace's] EEO Planning Specialist Human Resources upon application processing in her efforts to apply for job positions at the DMC for which she meets minimum qualifications," did not necessarily compel a different conclusion, because it was unclear whether this provision required *Ms. Griffin* to do anything for Redmon. [*Id.* at 12-14]. The Court noted, however, that it "could certainly envision a situation in which a respondent provides sufficient consideration for a claimant's agreement to the terms of a release by designating one individual to receive and properly process her future employment application materials. In that case, depending on how the provision was drafted, the claimant arguably is provided a benefit to which she is not otherwise entitled." [*Id.* at 14 n.5]. The Court ultimately decided that, while "a close call," the factual record before it did not support such an interpretation. [*Id.* at 13]. Importantly, the Court noted that under the record at the time, "one would need to [] infer that … Griffin would actively work with Redmon to walk her through [the application consideration] process." [*Id.*].

Contrary to Redmon's argument, the Court's prior Order did not foreclose an attempt to present new evidence to explain the unclear meaning of Ms. Griffin's designation as a contact person for Redmon "upon application processing in her efforts to apply for job positions at the DMC for which she meets minimum qualifications" as specified in the Agreement. Indeed, the Court clearly contemplated that further factual development could assist in that regard.

8

Moreover, a denial of summary judgment has no *res judicata* effect, and renewed or successive motions are permitted where good reasons exist for them. *Lexicon, Inc. v. SafeCo Ins. Co. of Am., Inc.*, 436 F.3d 662, 670 n.6 (6th Cir. 2006) *citing Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995) ("The denial of summary judgment has no *res judicata* effect, and the district court may, in its discretion, allow a party to renew a previously denied summary judgment motion or file successive motions, particularly if good reasons exist."). Good reasons for permitting renewed or successive summary judgment motions include (1) an intervening change in controlling law; (2) new evidence or an expanded factual record; or (3) a need to correct a clear error or prevent manifest injustice. *Durfee v. Rich*, No. 02-10041, 2007 U.S. Dist. LEXIS 23340 (E.D. Mich. Mar. 30, 2007); *see also Kovacevich v. Kent State Univ.*, 224 F.3d 806, 835 (6th Cir. 2000) (renewed or successive summary judgment motion permitted "particularly where the moving party has expanded the factual record on which summary judgment is sought").

In sum, this Court's initial ruling – that on the limited record before it, it could not conclude that the provisions providing Redmon with an equal employment opportunity, even when coupled with the clause regarding Ms. Griffin's involvement, constituted valid consideration for Redmon's release – was just that, an initial ruling based on the limited record then before the Court. The Court did not rule that the verbiage, particularly when read collectively, was unambiguous and susceptible of only one interpretation.

The parties have now engaged in discovery that has expanded the factual record, and the new evidence provides more clarity as to the issue of consideration. Therefore, the Court may revisit its prior decision on the matter, and finds it appropriate to do so, especially in light of the new evidence. For these reasons, Redmon's motion for summary judgment [28] is DENIED.

9

*2.  Sinai-Grace's Motion for Summary Judgment*

Sinai-Grace also moves for summary judgment. It argues that new evidence demonstrates, as a matter of law, that it gave Redmon valid consideration in exchange for her waiver of her right to sue, in the form of direct access to Ms. Griffin. In discussing the Agreement's reference to her involvement, Griffin averred that "if [Redmon] met the minimum qualifications for a specific posted position of interest, [she] would coordinate directly with the DMC recruiter to ensure [Redmon's] consideration and interview for the position," and who further averred that "[a]fter the execution of the Agreement, I fully performed this function for [Redmon]." (Mot. Ex. 1 at ¶3). Redmon does not offer any evidence to contradict this sworn statement, and admitted at the hearing that it was her understanding, at the time she signed the Agreement, that Marcia Griffin was to play this role for her.[7] Thus, to find consideration, the Court is no longer required to "infer that … Griffin would actively work with Redmon to walk her through [the application consideration] process"; that was Redmon's own understanding of what Sinai-Grace was giving her in the Agreement. [22 at 13]. As discussed below, this benefit to Redmon constituted legal consideration in exchange for the release of her claims.

Redmon maintains that while the above benefit was afforded to her, it was not *sufficient* consideration, and argues that Griffin should have done more to ensure that she actually obtained

---

[7] The Court notes that consideration is something given at the time an agreement is made (even if that something is a promise to act in the future). *See* Black's Law Dictionary 347 9th ed. 2009) (defining "consideration" as "Something (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee"). Thus, while Redmon's admitted understanding, at the time she signed the Agreement, that Sinai-Grace was making Ms. Griffin available to her to shepherd her job applications through the review process goes to the existence of consideration, the subsequent evidence that Griffin actually followed through on that obligation merely supports that Redmon's understanding was correct, and that Sinai-Grace did not operate in bad faith. *See infra*, p. 11. At any rate, as discussed below, Redmon's main challenge appears to be to the *sufficiency* of the obligation undertaken by Sinai-Grace, not its existence.

10

an interview, and ultimately a job. Redmon points to the fact that Griffin allegedly did not attempt to email her or telephone her at alternate numbers when she left her a voicemail on May 15, 2013, regarding a potential interview for a job with Harper Hospital. Redmon also argues that Ms. Griffin allegedly did not give her more time to respond to the interview offer, and did not postpone the interview to allow her a better opportunity to attend. Whether true or not, the Court need not reach this issue, because the question before it is whether *legal* consideration for the Agreement existed, not whether that consideration was "good enough." Courts do not generally inquire into the adequacy of consideration. *Cochran v. Ernst & Young*, 758 F. Supp. 1548, 1555 (E.D. Mich. 1991) (*citing Moffit v. Sederlund*, 145 Mich. App. 1, 378 N.W.2d 491 (1985)). "In Michigan, any consideration, however slight, is legally sufficient to support a promise." *Id.* (*citing Harris v. Chain Store Realty Bond & Mortgage Corp.*, 329 Mich. 136, 45 N.W.2d 5 (1951)). "Also in Michigan, a release from liability requires only nominal consideration." *Id.* (citing *Denton v. Utley*, 350 Mich. 332, (1951). Here, where there is no allegation or fraud or mistake [22 at 6], where Redmon herself acknowledges that the language of the Agreement meant that Ms. Griffin would personally assist her in the application process, and where this is what actually occurred, the Court finds sufficient consideration was given by Sinai-Grace in exchange for Redmon's waiver of rights.

This conclusion comports with the general principle favoring the enforcement of release agreements as to Title VII claims. As this Court previously explained:

> The Sixth Circuit has recognized that employers and employees may negotiate valid releases of Title VII claims. See Runyan v. National Cash Register Corp., 787 F.2d 1039 (6th Cir. 1986). Indeed, knowing and voluntary agreements to settle such cases are favored by courts and, once executed, should not be subject to easy invalidation. *See Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981) ("[i]n enacting Title VII, Congress expressed a strong preference for encouraging voluntary settlement of employment discrimination claims"). In other words, "A

> valid settlement agreement reached in the course of EEOC administrative proceedings concludes the issues addressed and forecloses a subsequent lawsuit on the same issues." *Mulbah v. Ypsilanti Bd. of Educ.*, 2006 WL 3240681, at *7 (E.D. Mich. Nov. 7, 2006); *see also Dalessandro v. Monk*, 864 F.2d 6, 8 (2d Cir. 1988) ("Once a plaintiff settles a claim and withdraws it from the EEOC, he may not then sue on the same claim in federal court.").

[22 at 5-6].

Finally, the Court rejects Redmon's argument that Ms. Griffin's failure to do more to assist her in the application process demonstrates a lack of good faith, which is required to underpin a promise in order for it to be construed as valid consideration. *See GMC v. Dep't of Treasury*, 466 Mich. 231, 245 (2002) (noting that a discretionary promise must be exercised in good faith and the reasonable execution of such a promise may constitute valid consideration) (*citing J.R. Watkins Co. v. Rich*, 254 Mich. 82, 84 (1931)). The evidence to which Redmon points does not demonstrate a lack of good faith on the part of Ms. Griffin. Ms. Griffin's role, as agreed to by the parties, was not to ensure Redmon a job, but to ensure that her application was considered for a job. Ms. Griffin reasonably executed this role when she contacted Redmon, by phone, about an interview and gave Redmon direct access to the hiring manager for the available position. That Redmon failed to timely retrieve her voicemails does not vitiate the good-faith attempt by Ms. Griffin to afford Redmon the opportunity she admittedly bargained for. The Court finds no lack of good faith in Ms. Griffin's execution of the bargained-for promise between the parties.

Because the Court finds that Redmon received valid consideration in exchange for releasing her claims against Sinai-Grace in the Agreement, and that the consideration was given in good faith, it recommends that Sinai-Grace's motion for summary judgment [32] be GRANTED.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Redmon's motion for summary judgment **[28]** be **DENIED**, and Sinai-Grace's motion for summary judgment **[32]** be **GRANTED**.

Dated: April 11, 2014                    s/ David R. Grand
                                         DAVID R. GRAND
                                         UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 11, 2014.

                                          s/Felicia M. Moses
                                          FELICIA M. MOSES
                                          Case Manager